IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Shaomin Sui | * | |
| | * | |
| v. | * | Civil Action No. 19-3318 |
| | * | |
| FedEx Ground Package System, Inc. | * | |

**MEMORANDUM**

Now pending is FedEx Ground Package System's motion to dismiss and compel arbitration (ECF 11) and motion to strike the amended complaint and/or compel arbitration and dismiss claims (ECF 19); Sui's motion to appoint counsel (ECF 13); and Sui's motion for leave to file a surreply (ECF 25). The motions have been briefed[1] and no hearing is necessary.[2]

**FACTS**

On June 28, 2018, Mingers, Inc. and FedEx Ground Package System, Inc. ("FedEx") entered into an Independent Service Provider ("ISP") Agreement, in which Mingers agreed to provide package pickup and delivery services to FedEx. (ECF 19-4, ISP Agreement, § 1.1). Shaomin Sui is 50% owner and Chief Operating Officer of Mingers Inc., and he signed the agreement on behalf of Mingers. (*Id.* at 1; ECF 19-5, FedEx Ground Entity Profile). Sui, proceeding *pro se*, filed a complaint against FedEx on November 19, 2019. He alleges that as a FedEx contractor, he was not paid a service fee for some of the packages delivered; he and his employee were threatened and his employee was told to code packages incorrectly; FedEx wrongly recorded his rate of performance and "took off [his] first right to renew [the] contract";[3]

---

[1] Sui filed a motion for leave to file a surreply (ECF 25) and a document titled "Plaintiff'[s] Reply in Support [of] the Motion to Demand for Trial," (ECF 26), which appears to actually be a proposed surreply in response to FedEx's motion to strike and/or to compel arbitration and dismiss claims. Although surreplies are generally disfavored, *EEOC v. Freeman,* 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part EEOC v. Freeman*, 778 F.3d 463 (4th Cir. 2015), because Sui is proceeding *pro se*, and because FedEx has not objected, the court will grant the motion for leave as to ECF 26. To the extent Sui seeks to file another surreply in addition to ECF 26, the motion for leave (ECF 25) is otherwise denied.
[2] The court denied Sui's request for a hearing on March 20, 2020. (ECF 23).
[3] The court presumes that the "contract" is the ISP agreement.

1

FedEx disqualified his employee; and FedEx made and executed the contract unfairly and unreasonably.  (ECF 1, Compl.).[4]  In his proposed amended complaint, Sui adds as plaintiff Zhijie Du, president and 50% owner of Mingers, (FedEx Ground Entity Profile), but there appear to be no allegations in the amended complaint regarding Du.  Sui alleges in the amended complaint that FedEx employees unlawfully discriminated against him on the basis of race and national origin; harassed, intimidated, and humiliated him; forced him to "drop off two towns for free"; and deliberately ignored or did not respond to some of Sui's common questions and business requests.  (ECF 16, Am. Compl.).  Sui also expands on his allegations in his initial complaint, stating which FedEx employees used wrong delivery data so Sui could not renew the contract, and which ordered Sui's employees to code packages incorrectly.[5]  (*Id.*).

The ISP agreement contains an arbitration provision.  The provision provides in part that:

> The Parties agree that any dispute that would be recognized in a court of appropriate jurisdiction, including any claim or controversy between the Parties arising since the effective date of this Agreement and out of or relating in any way to this Agreement and/or the relationship between the parties resulting from this Agreement, including without limitation the interpretation of any provision of this Agreement, the performance by [Mingers] or [FedEx], the treatment by one Party of the other, the termination of this Agreement and/or the determination of the scope or applicability of this agreement to arbitrate, shall be determined by final binding arbitration. . . . The arbitrator shall have exclusive authority to resolve any Disputes concerning the formation, existence, validity, enforceability, interpretation, or scope of this agreement to arbitrate. . . . **THE PARTIES ACKNOWLEDGE THAT THE RIGHT TO A COURT TRIAL AND TRIAL BY JURY IS OF VALUE.  BY SIGNING THIS AGREEMENT, THE PARTIES KNOWINGLY AND VOLUNTARILY WAIVE SUCH RIGHT FOR ANY DISPUTE, SUBJECT TO THE TERMS OF THIS AGREEMENT TO ARBITRATE.**

---

[4] The asserted basis for jurisdiction is diversity jurisdiction (Compl. at 4), which FedEx does not challenge.  It appears there is complete diversity between the parties and the amount in controversy is over $75,000.  *See* 28 U.S.C. § 1332.
[5] In his amended complaint Sui noted that an attachment containing factual allegations was being filed separately. (ECF 16-1).  It is not clear what this refers to.

(ISP agreement § 16.3) (capitalization and bolding in original).  The ISP agreement also provides that it will be governed by Pennsylvania law.  (*Id.* § 18.10).

## STANDARD OF REVIEW

FedEx moves to dismiss and compel arbitration under Federal Rule of Civil Procedure 12(b)(3) and the Federal Arbitration Act ("FAA").  The Fourth Circuit has in the past treated a motion to dismiss based on a forum selection clause, including an arbitration clause, as a motion to dismiss under Rule 12(b)(3) for improper venue.  *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 n.9 (4th Cir. 2012).  But in *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, the Supreme Court stated that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*" and not through a Rule 12(b)(3) motion.  571 U.S. 49, 60 (2013).  Some courts have continued to construe motions to dismiss based on an arbitration clause under Rule 12(b)(3), *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 549 (D. Md. 2019), while others have denied such motions brought under Rule 12(b)(3) as foreclosed by *Atlantic Marine*, *see Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*, 250 F. Supp. 3d 13, 15–16 (E.D. Va. 2017) (but then analyzing the motion to compel arbitration under the FAA, which was brought in the alternative).  In any event, the court need not decide because whether FedEx seeks dismissal under Rule 12(b)(3) or moves to compel arbitration under the FAA, the standards of review are similar.  The court will consider evidence outside the pleadings (namely, the ISP agreement), and view the facts in the light most favorable to the plaintiff.  *See Stone*, 361 F. Supp. 3d at 549; *Meridian Imaging Sols., Inc.*, 250 F. Supp. at 21.

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely given "when justice so requires."  Therefore, "leave to amend should be denied only when the

amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). An amendment is futile when it "is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

## DISCUSSION

I. Motion to strike amended complaint and/or compel arbitration and dismiss claims

The Federal Arbitration Act "provides for the enforceability of arbitration agreements[.]" *McCormick v. Am. Online, Inc.*, 909 F.3d 677, 678 (4th Cir. 2018). "In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (internal quotation marks and citation omitted); *see also Meridian Imaging Sols., Inc.,* 250 F. Supp. 3d at 20–21. It appears the only issue the parties disagree on is whether the written agreement includes a valid arbitration agreement that covers the dispute. The court therefore addresses whether there is a valid agreement to arbitrate and whether Sui's claims fall within the scope.

A. <u>Valid agreement to arbitrate</u>

Sui's main contention is that he brings claims against FedEx individually and is not bound by the arbitration clause, as only Mingers is a party to the ISP agreement in which the arbitration clause is contained. "Generally, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit". *Int'l*

*Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (internal quotation marks and citation omitted).  But "a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause."[6]  *Id.*; *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("traditional principles of state law allow a contract to be enforced by or against nonparties to the contract" (internal quotation marks and citation omitted)).  One way is through the doctrine of equitable estoppel, in which "a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him."  *Int'l Paper Co.*, 206 F.3d at 418; *see also Sanford v. Bracewell & Guiliani, LLP,* 618 F. App'x 114, 118 (3d Cir. 2015)[7] (non-signatories can be bound by arbitration agreements when they seek to enforce the contract's other provisions, and applying Pennsylvania law).

FedEx argues that Sui is bound by the arbitration provision because he directly benefitted from the contract as 50% owner of Mingers.  But the court must be careful not to "disregard[] the corporate form and treating a non-signatory like a signatory[.]"  *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 201 (3d Cir. 2001).  FedEx does not explain how Sui directly benefitted from the ISP agreement other than his being an owner of a party to the agreement.  And to take FedEx's position would appear to make any owner of a company personally bound by the company's contracts.

FedEx next argues that Sui is bound by the arbitration clause because he bases his claims on the ISP agreement.  The court agrees.  In Sui's initial complaint, Sui stated that "we are [a] FedEx contractor," implying that the claims were based on Mingers' status as a contractor, and

---

[6] Sui signed the ISP agreement, but on behalf of Mingers.
[7] Unreported cases are cited for the soundness of their reasoning, not for any precedential value.

in his civil cover sheet stated that this was a breach of contract case. (Compl.; ECF 1-1, Civil Cover Sheet). In response to FedEx's first motion to dismiss and compel arbitration, Sui amended his complaint to include generic allegations of discrimination, harassment, and intimidation, but the specific factual allegations in the amended complaint all regard alleged interference with Sui's contracting services or the failure to pay him for services. To the extent that Sui attempted to transform his breach of contract action by adding that FedEx employees discriminated against him, harassed and intimidated him, and created a hostile work environment, he has identified no other legal basis for his claims. The pleadings indicate that this is a breach of contract action based on the ISP agreement. Therefore, the court finds that Sui is equitably estopped to avoid the arbitration clause because his claims are based on the ISP agreement. If Du also brings these claims against FedEx, the same reasoning applies and Du cannot avoid the arbitration clause either. Finally, to the extent Sui seeks to assert a statutory employment discrimination claim, he has not identified what claim he seeks to bring, it is not clear in what state Sui worked,[8] and it does not appear that he has exhausted administrative remedies that would be required. *See e.g.* Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't, Human Relations § 20-601, *et seq.*; *id.* § 20-1013 (administrative charge requirement).

Sui argues that the ISP agreement, including the arbitration clause, is unconscionable.[10] Sui cites to *Openshaw v. FedEx Ground Package Sys., Inc.*, 731 F. Supp. 2d 987 (C.D. Cal. 2010), which involved a claim by a FedEx contractor against FedEx for wrongful termination of

---

[8] It appears Sui lives in Maryland, but his company, Mingers Inc., is registered in Maine, and his amended complaint makes reference to an employee who worked at Saco Station, Maine.

[10] Sui also argues the ISP agreement as a whole is unconscionable, but a challenge to the contract as a whole is not relevant in determining whether the arbitration agreement is enforceable. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.").

the contractor operating agreement between the parties. The court, applying Pennsylvania law, found the arbitration provision in the agreement unconscionable and unenforceable. *Id.* at 998. According to Sui, his situation is similar to the one in *Openshaw*, in that he purchased a business from a FedEx contractor and invested half a million dollars in it, FedEx presented the ISP agreement as take or leave it, and Sui did not have any bargaining power to change anything about the contract. *See id.* at 994 (finding procedural unconscionability where "Mr. Openshaw had no meaningful choice but to sign the COA, lest he risk losing the life savings that he had spent acquiring the business.").

Under Pennsylvania law, "a contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." *Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 331 (2007). Here, even assuming there was a lack of meaningful choice, Sui has not shown that the arbitration provision unreasonably favors FedEx, *i.e.* that it is substantively unconscionable. In *Openshaw*, the court noted several arbitration provisions that unreasonably favored FedEx: contractors had just 90 days to file an arbitration claim for wrongful termination, while FedEx had four years; discovery and damages were severely limited; the arbitrator had no authority to allocate costs; and the arbitrator was prohibited from issuing a written opinion. 731 F. Supp. 2d at 994–97. In the ISP Agreement between Sui and FedEx, both parties have one year to demand arbitration, (ISP Agreement, § 16.5(A)); the parties may issue interrogatories and document requests and conduct a limited number of depositions, (*id.* § 16.5(C)); the arbitrator may award all relief permitted by applicable law, except indirect, consequential, or special damages, (*id.* § 16.5(D), § 13.2); and the arbitrator must issue a written award with reasons given and evidence cited, (*id.* § 16.5(D)). These provisions are much different – and fairer – than those

at issue in *Openshaw*. Further, the court does not have information about what costs Sui would incur if he initiated and proceeded with arbitration, so it cannot find that the costs are prohibitively high. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) ("The 'risk' that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."). Here, the arbitration clause provides that FedEx will reimburse Mingers, Inc. for initial filing fees up to $2,500, (ISP Agreement, § 16.5(B)), and to the extent Sui claims unlawful termination for cause under Section 15.3 of the ISP agreement, it appears FedEx will pay for arbitrator and court reporter fees and costs, (*id.*).

Accordingly, the court cannot find that the arbitration clause is unconscionable. [11]

B. Scope of the arbitration clause

The court next addresses whether the claims fall within the scope of the arbitration clause. The court agrees with FedEx that this is an issue for the arbitrator to decide. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Stone*, 361 F. Supp. 3d at 553 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The arbitration provision provides that the arbitrator has "exclusive authority to resolve any Disputes concerning the . . . scope of this agreement to arbitrate." (ISP Agreement, § 16.3). This is a clear indicator that the parties agreed that the arbitrator would decide the scope of the arbitration clause, including what claims are subject to it.

C. Dismissal or stay

---

[11] Sui also argues that under U.S. law, a person cannot "contract out" of his or her right to file a human rights complaint, and refers to the Constitutional guarantees of protection from cruel and unusual punishment and the right to a fair trial by a jury. The arbitration clause, however, clearly states that the parties waived the right to trial by a jury, (ISP Agreement § 16.3), which is permissible, *see Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 306–07 (4th Cir. 2001). As Sui is equitably estopped from avoiding the arbitration clause, the clause also applies to him. The Eighth Amendment's protection from cruel and unusual punishment applies to those convicted of crimes, *Ingraham v. Wright*, 430 U.S. 651, 664 (1977), and is not applicable here.

The FAA provides that a case should be stayed when the issues are referred to arbitration. 9 U.S.C. § 3.  But dismissal, rather than a stay, "is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001).  Here, it is not clear if all the issues presented are arbitrable, which is for the arbitrator to decide.  Specifically, since the arbitration clause appears to apply only to claims between the parties to the agreement (Mingers and FedEx), a threshold question appears to be whether these claims should have been brought by Mingers instead of Sui.  Therefore, the court will stay these proceedings pending arbitration.

D. Amended complaint

Sui filed his amended complaint more than 21 days after FedEx filed its motion to dismiss, and did not request leave in accordance with Fed. R. Civ. P. 15.  But "in light of Plaintiffs' pro se status, this Court construes the Amended Complaint as a Motion for Leave to File an Amended Complaint." *Howard v. Ocwen Loan Servicing, Inc.*, No. CV RDB-18-3296, 2019 WL 4750333, at *2 (D. Md. Sept. 30, 2019).  Leave to amend should be freely given and the court cannot find at this time that the claims in Sui's amended complaint must be arbitrated, as the arbitrator will decide the scope of the arbitration clause.  The court will grant Sui leave to file an amended complaint and deny the motion to strike.

Accordingly the court will grant in part and deny in part FedEx's motion to strike the amended complaint and/or compel arbitration and dismiss claims (ECF 19).  The previous motion to compel arbitration and dismiss (ECF 11), relating to the original complaint, will be denied as moot.  Because the court compels arbitration under the FAA, it does not address FedEx's alternative basis to compel arbitration under the Pennsylvania Uniform Arbitration Act.

II. Request for lawyer

In civil actions, the court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In so doing, the court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160,163 (4th Cir. 1984) (internal citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read and write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F.Supp. 2d 717, 723 (E.D.Va. 2008). Sui has not demonstrated the exceptional circumstances needed for the court to appoint counsel. Accordingly, the request will be denied.

## CONCLUSION

For the reasons stated above, the court will: (1) grant in part and deny in part FedEx's motion to strike the amended complaint and/or compel arbitration and dismiss claims (ECF 19); (2) deny the motion to compel arbitration and dismiss claims (ECF 11) as moot; (3) construe Sui's amended complaint (ECF 16) as a motion for leave to file an amended complaint and grant it; (4) deny Sui's motion to appoint counsel (ECF 13); and (5) grant in part Sui's motion to file a surreply (ECF 25) as to ECF 26 (treated as a proposed surreply) and otherwise deny it. The case will be stayed pending arbitration. A separate order follows.

| | |
|---|---|
| 7/6/20 | /S/ |
| Date | Catherine C. Blake<br>United States District Judge |